# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ROCHELL MITCHELL, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO.: 10-CV-6847 |
| | ) | |
| JCG INDUSTRIES and KOCH FOODS, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Rochell Mitchell and Audrey Veasley, individually and on behalf of all others similarly situated, brought this action against Defendants JCG Industries, Inc. ("JCG") and Koch Meat Co., Inc. ("Koch"), as a putative class action for violation of the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. § 105 *et seq.* (Count I), and, individually, for violation of the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. § 201 *et seq.* (Count II). Defendants have moved to dismiss Count I of the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and Rule 12(b)(6). For the following reasons, the Court grants Defendants' motion to dismiss [11]. The Court sets this matter for a status hearing on June 14, 2011, at 9:00 a.m.

## I.     Background[1]

Plaintiffs Rochell Mitchell and Audrey Veasley worked as poultry processors for JCG and Koch, two Illinois corporations that operate poultry processing plants. Plaintiffs seek to represent other employees who worked in similar positions for JCG and Koch and shared similar

---

[1]  For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

job titles, pay plans, job descriptions, job duties, uniforms and hours of work. Defendants managed Plaintiffs' work and controlled their wage and hour compensation policies. Plaintiffs were hourly, non-exempt employees and were paid hourly rates between $7.00 and $11.00 per hour.

JCG and Koch employees were required to work five to seven days per week. The first shift was scheduled from 6:00 am to 2:30 pm and the second shift was from 3:00 pm to 11:30 pm; each employee had a scheduled unpaid thirty-minute meal break. Employees were provided with time cards to keep track of time worked and were required to swipe in when they arrived at work and swipe out as they left the production floor. Instead of requiring employees to swipe in and out for meal breaks, Defendants automatically deducted thirty minutes for meal breaks, regardless of whether the entire break was taken. If employees were more than one minute late to the production floor, they were docked pay for fifteen minutes or more.

Plaintiffs allege that they regularly worked more than forty hours per week without proper overtime compensation by working before the start of their shifts, through unpaid meal breaks, and after their scheduled shifts. Defendants did not pay employees for the time spent "donning" clothes or protective equipment before the line started at the beginning of their scheduled shifts or for time spent donning or washing during lunch breaks or after the line stopped, even though employees are required to don, doff, and wash before and after scheduled shifts. Plaintiffs allege that Defendants were aware that employees routinely worked more than forty hours per week but failed to accurately record the hours or properly pay them overtime.

Plaintiffs and Defendants were subject to a collective bargaining agreement ("CBA"). Article V of the CBA provides for the calculation of hours worked, including overtime, and

Article IX provides an approved grievance procedure.[2] The CBA also contains specific provisions concerning donning and doffing of work-related clothing.

This case mirrors a case brought by Plaintiffs' counsel in 2009. See *Anderson v. JCG Industries*, 2009 WL 3713130 (N.D. Ill. Nov. 4, 2009). That case involved the same putative class (poultry processors at Defendants' processing plant in Chicago), essentially the same time period, and the same two claims (an Illinois Minimum Wage Law ("IMWL") claim and a claim under the FLSA) based on the same conduct alleged in the present case. In *Anderson v. JCG Industries*, the court found that the equivalent of Count I here—i.e., a claim for alleged violation of the IMWL—was preempted by federal law because the putative class members were governed by collective bargaining agreements that would have to be interpreted to resolve the plaintiffs' claims. *Id.* at *4. The parties settled the FLSA claim.

## II.    Standard of Review

The purpose of a Rule 12(b) motion to dismiss is not to decide the merits of the case. A Rule 12(b)(6) motion tests the sufficiency of the complaint, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990), while a Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction. *Long v. Shorebank Development Corp.,* 182 F.3d 548, 554 (7th Cir. 1999). In reviewing a motion to dismiss under either rule, the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in her favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Long*, 182 F.3d at 554.

---

[2] Plaintiffs avoid referring to or attaching the CBA to their complaint. However, "even if a plaintiff makes no mention of § 301 in a complaint, § 301 nevertheless may displace entirely a state cause of action." *Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495, 498 (7th Cir. 1996). Additionally, parties may not survive a motion to dismiss by artful pleading or failing to attach relevant documents. See *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Fields v. Wilber Law Firm, P.C.*, 2003 WL 23094867, at *3 (C.D. Ill. July 22, 2003) (allowing defendant to rely on contract where plaintiff had strategically omitted reference to contract). In this case, the CBA is central to Plaintiffs' claims and the Court will consider it in ruling on Defendants' motion to dismiss.

To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

Surviving a Rule 12(b)(1) motion to dismiss is more difficult. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). Federal courts are courts of limited jurisdiction; "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001). Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The plaintiff bears the burden of establishing that a district court has proper jurisdiction of an action. *Transit Express*, 246 F.3d at 1023. A defendant arguing that the

plaintiff has not met this burden with respect to an action may move for dismissal under Rule 12(b)(1).

## III. Analysis

In Count I of the complaint, Plaintiffs allege a violation of the IMWL, claiming that Defendants "regularly and repeatedly fail[ed] to properly compensate Plaintiffs * * * for the actual time they worked each week," as well as "willfully failed to pay overtime pay and other benefits." Defendants contend that Count I relates to unpaid wages which "fall squarely within the purview of the [CBA]" and therefore is preempted by Section 301 of the Labor Management Relations Act ("LMRA"). If preempted, the claim would have to be brought under the LMRA, which requires employees to exhaust grievance and arbitration remedies provided in the collective bargaining agreement before filing suit. See, *e.g.*, *Atchley v. Heritage Cable Vision Assocs.,* 101 F.3d 495, 501 (7th Cir. 1996).

### A. Background on LMRA preemption

Section 301 of the LMRA completely preempts state claims where a dispute between an employer and labor organization requires interpretation of a collective bargaining agreement's terms. *Atchley*, 101 F.3d at 499. The statute "confers federal court jurisdiction over disputes that arise out of collective bargaining agreements" and "preempts state law claims that touch on its subject matter." *Lopez v. Smurfit-Stone Container Corp.,* 2003 WL 297533, at *2 (N.D. Ill. Feb.10, 2003). Claims founded on rights created by a collective bargaining agreement or that are dependent on and require analysis of the collective bargaining agreement are preempted:

> The guiding principle behind § 301 preemption was that a contract should not have different meanings under federal law and the laws of various states. Today, it is well-understood that a claim for breach of a collective bargaining agreement is preempted * * * * What has become clear is that preemption can extend beyond contract disputes to other state law claims if resolution of those claims is sufficiently dependant on an interpretation of a CBA.

*In re Bentz Metal Prods. Co., Inc.,* 253 F.3d 283, 286 (7th Cir. 2001) (citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394 (1987)). Even where the plaintiff does not refer to the LMRA in the complaint, § 301 may still displace a state cause of action. See *Atchley,* 101 F.3d at 498.

Not all state claims are preempted. Instead, preemption is determined on a case by case basis. *In re Bentz,* 253 F.3d at 285. Where the state law claim has its roots in a specific clause of a collective bargaining agreement, the complaint arises under federal law. *Atchley,* 101 F.3d at 499 (quoting *Caterpillar Inc.,* 482 U.S. at 394). Where resolution of the claim is "inextricably bound up with the terms of the collective bargaining agreement," interpretation of the collective bargaining agreement by the court is inevitable and the state claim is preempted by the LMRA. *Gelb v. Air Con Refrigeration & Heating,* 826 N.E.2d 391, 399 (Ill. App. Ct. 2005). The Seventh Circuit has held that where the entitlement to wages or the amount due is at issue, the collective bargaining agreement controls and preemption applies. *In re Bentz,* 253 F.3d at 289. But where the claim merely references the collective bargaining agreement, it is not preempted by federal labor law. *Lopez,* 2003 WL 297533, at *2 (citing *Livadas v. Bradshaw,* 512 U.S. 107, 124 (1994); *In re Bentz,* 253 F.3d at 285).

For instance, in *Atchley,* the union filed a grievance against the employer alleging failure to pay wage increases and bonuses as agreed to by the parties in the ratified collective bargaining agreement. 101 F.3d at 497. Because the agreement specifically provided for the timing of the payment of wage increases and bonuses, the claim arose from the collective bargaining agreement. *Id.* at 500. The Seventh Circuit found that determining the payment date required interpreting the collective bargaining agreement, thus "putting [the agreement] squarely within the completely preemptive effect of § 301 and transforming it into a federal claims for breach of the CBA, which had to be grieved pursuant to the CBA's grievance procedures." *Id.* at 502.

## B.    Plaintiffs' Allegations

Plaintiffs' Count I is brought under the IMWL.  The IMWL is a wage and hour law that establishes the minimum wage at $8.25 an hour but expressly states that it does not amend or rescind any other state laws that provide more favorable minimum wage or maximum hour standards.  See 820 ILCS 105/4, 105/13.  Likewise, the IMWL does not "in any way diminish the right of employees to bargain collectively with their employers through representatives of their own choosing in order to establish wages or other conditions of work *in excess of the applicable minimum standards of the provisions of this Act.*"  820 ILCS 105/14 (emphasis added).  The federal counterpart to the IMWL is FLSA section 203(o), which allows parties to a CBA to specifically exclude donning and doffing from the amount of hours worked for the purpose of calculating the minimum wage and maximum workweek.  See, *e.g.*, *Curry v. Kraft Foods Global, Inc.*, 2010 WL 4338637, at *3 (N.D. Ill. Oct. 25, 2010)

This time around, cognizant that at least three district courts in this circuit have dismissed similar (if not identical) claims (see *Curry v. Kraft Foods Global, Inc.*, 2010 WL 4338637, at *4 (N.D. Ill. Oct. 25, 2010); *Anderson v. JCG Industries*, 2009 WL 3713130 (N.D. Ill. Nov. 4, 2009); *Thigpen v. Illinois Bell Telephone Co.*, 2010 WL 5373827, at *3-4 (N.D. Ill. Dec. 21, 2010)), Plaintiffs rely on language from the Seventh Circuit's decision in *Spoerle v. Kraft Foods, Inc.*, 614 F.3d 427, 430 (7th Cir. 2010), to support their argument that their IMWL claim is not preempted by the LRMA.  Plaintiffs also contend that Defendants have mischaracterized Plaintiffs' claims.  Plaintiffs claim that they do not seek enforcement of any contractual rights, but rather ask this Court to determine "the discreet question of whether the amount of wages they were actually paid falls below the minimum standards established by the IMWL for the time they actually worked."  Plaintiffs frame the issue as whether the law permits an employer to

contractually exclude donning and doffing, and other duties, from the definition of work under the IMWL. Unfortunately for Plaintiffs, their reliance on *Spoerle* is unavailing, as this case suffers from the same defects found in *Curry*, *Thigpen*, and, most directly, *Anderson*.

In *Spoerle,* a case involving the application of Wisconsin's wage laws, the management and union agreed in a CBA that time spent donning and doffing was not compensable. *Id.* at 919. However, Wisconsin state wage and hour law required exactly the opposite—that time spent donning and doffing must be compensated at minimum wage or higher. *Id.* The Seventh Circuit held that the CBA created under FLSA section 203(o) did not preempt the Wisconsin state laws. *Id.* at 430. The court reasoned that "[n]othing that labor and management can put into a collective bargaining agreement exempts them from state laws of general application." *Id.* Further, "[m]anagement and labor acting jointly (through a CBA) have no more power to override state substantive law than they have when acting individually." *Id.*

Although Plaintiffs' response repeatedly suggests that the IMWL requires that donning and doffing be counted toward hours worked, as the Wisconsin minimum wage law at issue in *Spoerle* did, the IMWL actually is silent on the issue of donning and doffing. The parties have not presented, nor has the Court found, a single case holding that Illinois law requires time spent donning and doffing to be included in hours worked or that a collective bargaining agreement may not exclude donning and doffing from hours worked under the IMWL. Instead, legal authority supports just the opposite conclusion. See, *e.g.*, *Carletto v. Quantum Foods*, 2006 WL 2018250, at *6 (Ill. App. Ct. 1st Dist. 2006) (addressed *infra*); *Curry*, 2010 WL 4338637, at *4 ("Illinois law does not contain a requirement like Wisconsin that requires calculation of donning and doffing time in hours worked").

*Spoerle* addressed the situation where a conflict exists between a state law and FLSA section 203(o). However, no such conflict is present between Illinois wage and hour laws and FLSA section 203(o). In *Spoerle,* the terms agreed to under the CBA directly conflicted with Wisconsin law: while Wisconsin law required that donning and doffing count towards hours worked, under section 203(o) the parties agreed in their CBA to exclude donning and doffing time. But here, unlike Wisconsin law, Illinois wage and hour law does not require the calculation of donning and doffing time. See also *Curry*, 2010 WL 4338637, at *4; *Anderson v. JCG Industries*, 2009 WL 3713130, at *3-4 (N.D. Ill. Nov. 4, 2009). Further, section 203(o) and the IMWL allow for CBAs to alter work hour and workweek calculations in excess of minimum state or federal standards. Because *Spoerle* dealt with conflicting state and federal provisions, and such a conflict does not exist here, the Court cannot mechanically follow the decision in *Spoerle* as Plaintiffs suggest. While the CBA in *Spoerle* effectively exempted the parties from "state law[ ] of general application" that required adding donning and doffing time to hours worked, the CBA in this case does not circumvent Illinois wage and hour law.

The IMWL claim in this case will require the interpretation of certain terms in the CBA. First, the Court would look at Article V of the CBA, which addresses the compensability of time spent donning and doffing work-related clothing. Article V states that "employees will not be compensated anytime for donning and doffing or washing outside of line time, unless the Company decides otherwise." Because the compensability of donning and doffing presents the key issue in this case, and the CBA speaks directly to the issue while Illinois law does not, the Court would look to the CBA as an indicator of the bargained-for rights of Plaintiffs.

Even if Plaintiffs concede that the CBA does not provide for the compensability of donning and doffing, the CBA contains additional terms that the Court would look at in resolving

Plaintiffs' IMWL claim. Article V addresses regular working hours and overtime pay; the amount to be paid for overtime; the amount to be paid for overtime for work done on holidays and weekends; and the proper treatment for "rest periods." Moreover, the CBA contains detailed wage rate tables, setting forth the wage rates to be paid to a range of employees based on their seniority and classifications. In order to determine whether Plaintiffs were properly compensated for hours worked in excess of forty-hours per week and, if not, how to calculate the amounts allegedly owed, the Court would look to terms in the CBA. See *Curry*, 2010 WL 4338637, at *6 (calculation of any unpaid overtime would entail deciphering the compensation and overtime provisions of the collective bargaining agreement, which included "more generous compensation options than the [Illinois Wage Law]"). These provisions, in addition to the provisions regarding donning and doffing, must be analyzed in determining whether or not Plaintiffs' were fairly compensated.

Illinois state courts have found preemption under similar circumstances. In *Carletto v. Quantum Foods*, the Illinois Appellate Court specifically relied on the fact that resolution of the IMWL claim would depend on whether donning and doffing work-related clothing was compensable "work" under the applicable collective bargaining agreement, which is a matter of federal contract interpretation. 2006 WL 2018250, at *6 (Ill. App. Ct. 1st Dist. 2006) ("it is a matter of federal contract interpretation to determine whether the words of a collective bargaining agreement created implied rights"). Notably, the court did not hold that the IMWL required payment for donning and doffing time, nor did it hold that the parties were precluded under the IMWL from agreeing to exclude donning and doffing from compensable time. Indeed, by finding the plaintiffs' claims to be preempted by the LMRA, the court implicitly recognized that the parties could exclude donning and doffing. Similarly, in *Gelb v. Air Con Refrig. &*

*Heating, Inc.*, the Illinois Appellate Court held that similar claims for overtime pay under the IMWL were preempted because the resolution of the claims depended on the interpretation of a collective bargaining agreement. 826 N.E.2d 391, 399-400 (Ill. App. Ct. 1st Dist. 2005). As the court in *Gelb* explained:

> Here, in order to determine whether defendants had violated the Wage Law, a finder of fact would have no choice but to refer to the collective bargaining agreement in order to determine the amount of wages that were due and owing to the individual plaintiffs and the other members of the proposed class. In order to ascertain whether defendants' compliance with the collective bargaining agreement in paying overtime wages violated the Wage Law, a court would have to determine the pay scale for each plaintiff, with the relevant deductions to which plaintiffs objected, and the amount of overtime each plaintiff worked in the relevant time period, and calculate those figures using the formula prescribed by the collective bargaining agreement. Moreover, the collective bargaining agreement provided for overtime compensation that, in some instances, exceeded the minimum rate mandated by the Wage Law.

*Id.* at 399. As previously set forth, these same considerations are at play in this case.[3]

As the court in *Anderson* noted, preemption is especially appropriate where the collective bargaining agreement requires overtime pay of more than what the IMWL minimally requires. 2009 WL 3713130, at *4; see also *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417, at *5 (N.D. Ill. Nov. 29, 2007). The IMWL provides that overtime pay will be time and one half for all hours worked over forty. Section 2 of Article V of the CBA resembles the IMWL and provides that employees are to be paid one and one half times their hourly rate for overtime. However, the CBA provides for overtime pay that exceeds the rate mandated by the IMWL. Sections 5 and 6 of Article V specifically outline the method for calculating overtime and the applicable rates, and § 6 provides that employees be paid double their regular pay for overtime worked on Sundays. Clearly, this right is one derived solely from the CBA. In addition to the

---

[3] In spite of Defendants' reliance on the clear import of these cases in their opening brief, Plaintiffs failed to address either of these holdings in their response.

CBA provisions pertaining to time paid for the donning and doffing of clothing as well as paid and unpaid breaks, an analysis of these additional provisions also may be required to determine whether overtime was properly paid and whether Plaintiffs' pay was consistent with both the CBA and the minimum standards established by the IMWL.

The question of whether the time that Plaintiffs and other similarly situated employees spend getting "ready to work" is in fact considered "work" by their employer requires an analysis of the CBA terms that specifically govern their compensable work, job descriptions, salary, and hours. At bottom, the parties freely negotiated and entered into the CBA with its donning and doffing provision, and in turn received benefits that are not granted by the IMWL. Because the CBA does not conflict with IMWL on the issue of donning and doffing, Plaintiffs were bound to the benefits and concessions contained in the CBA in effect at the time that they began their employment. And without a provision on donning and doffing in the IMWL comparable to that found in Wisconsin law, the Seventh Circuit's decision in *Spoerle* does not save Plaintiffs' claim from the fate of the *Anderson* Plaintiffs. Rather, the language used by the Seventh Circuit merely highlights the difference between the circumstances in *Spoerle* and those presented here and in *Anderson*.

## IV.     Conclusion

For the reasons set forth above, the Court grants Defendants' motion to dismiss [11] Count I of Plaintiffs' complaint.  The Court sets this matter for a status hearing on June 14, 2011, at 9:00 a.m.

Dated: May 31, 2011

_____
Robert M. Dow, Jr.
United States District Judge