IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROCHELL MITCHELL, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO.: 10-CV-6847 |
| | ) | |
| JCG INDUSTRIES and KOCH FOODS, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Rochell Mitchell and Audrey Veasley, individually and on behalf of all others similarly situated, brought this action against Defendants JCG Industries, Inc. ("JCG") and Koch Meat Co., Inc. ("Koch"), as a putative class action for violation of the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. § 105 *et seq.* (Count I), and, individually, for violation of the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. § 201 *et seq.* (Count II). Defendants moved to dismiss Count I of the complaint, arguing that Count I relates to unpaid wages which "fall squarely within the purview of the [CBA]" and therefore is preempted by Section 301 of the Labor Management Relations Act ("LMRA"). The Court agreed and granted the motion to dismiss Count I. Plaintiffs now ask the Court to reconsider its previous ruling, arguing that the Court has misconstrued their claims and maintaining that the relief they seek in Count I arises solely under the IMWL and is not within the purview of any bargained-for rights under the CBA. For the reasons set forth below, the Court finds that Plaintiffs have sufficiently cabined their IMWL claim such that the LMRA does not preempt Count I and therefore grants Plaintiffs' motion to reconsider [32].

I.   **Background**

Plaintiffs Rochell Mitchell and Audrey Veasley worked as poultry processors for JCG and Koch, two Illinois corporations that operate poultry processing plants. Plaintiffs seek to represent other employees who worked in similar positions for JCG and Koch and shared similar job titles, pay plans, job descriptions, job duties, uniforms and hours of work. Defendants managed Plaintiffs' work and controlled their wage and hour compensation policies. Plaintiffs were hourly, non-exempt employees and were paid hourly rates between $7.00 and $11.00 per hour.

JCG and Koch employees were required to work five to seven days per week. The first shift was scheduled from 6:00 am to 2:30 pm and the second shift was from 3:00 pm to 11:30 pm; each employee had a scheduled unpaid thirty-minute meal break. Employees were provided with time cards to keep track of time worked and were required to swipe in when they arrived at work and swipe out as they left the production floor. Instead of requiring employees to swipe in and out for meal breaks, Defendants automatically deducted thirty minutes for meal breaks, regardless of whether the entire break was taken. If employees were more than one minute late to the production floor, they were docked pay for fifteen minutes or more.

Plaintiffs allege that they regularly worked more than forty hours per week without proper overtime compensation by working before the start of their shifts, through unpaid meal breaks, and after their scheduled shifts. Defendants did not pay employees for the time spent "donning" clothes or protective equipment before the line started at the beginning of their scheduled shifts or for time spent donning or washing during lunch breaks or after the line stopped, even though employees are required to don, doff, and wash before and after scheduled

shifts. Plaintiffs allege that Defendants were aware that employees routinely worked more than forty hours per week but failed to accurately record the hours or properly pay them overtime.

Plaintiffs and Defendants were subject to a collective bargaining agreement ("CBA"). Article V of the CBA provides for the calculation of hours worked, including overtime, and Article IX provides an approved grievance procedure. The CBA also contains specific provisions concerning donning and doffing of work-related clothing.

## II. Analysis

Because the Court's May 31, 2011 order did not dispose of this case in its entirety, the Court reviews Plaintiffs' motion for reconsideration under Federal Rule of Civil Procedure 54(b), which states in relevant part: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Accordingly, under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because such orders may be revised at any time before the Court enters a final judgment. See *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"); *Sims v. EGA Prods., Inc.,* 475 F.3d 865, 870 (7th Cir. 2007) ("nonfinal orders are generally modifiable").

However, it is well established in this district and circuit that "'[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.'" *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus.,*

3

*Inc.,* 90 F.3d 1264, 1269 (7th Cir. 1996)). In regard to the "manifest error" prong, the Seventh Circuit has explained that a motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); see also *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'"); *Bilek v. American Home Mortg. Servicing,* 2010 WL 3306912, at *1 (N.D. Ill. Aug. 19, 2010). And with respect to the second prong, the court of appeals has explained that a motion to reconsider may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee*, 906 F.2d at 1191.

In Count I of the complaint, Plaintiffs allege a violation of the IMWL,[1] claiming that Defendants "regularly and repeatedly fail[ed] to properly compensate Plaintiffs * * * for the actual time they worked each week," as well as "willfully failed to pay overtime and other benefits." Defendants contend that Count I relates to unpaid wages which "fall squarely within

---

[1] The IMWL is a wage and hour law that establishes the minimum wage at $8.25 an hour but expressly states that it does not amend or rescind any other state laws that provide more favorable minimum wage or maximum hour standards. See 820 ILCS 105/4, 105/13. Likewise, the IMWL does not "in any way diminish the right of employees to bargain collectively with their employers through representatives of their own choosing in order to establish wages or other conditions of work *in excess of the applicable minimum standards of the provisions of this Act.*" 820 ILCS 105/14 (emphasis added). The federal counterpart to the IMWL is the FLSA. See, *e.g.*, 29 U.S.C. § 203. Section 203(o) of the FLSA allows parties to a CBA to specifically exclude donning and doffing from the amount of hours worked for the purpose of calculating the minimum wage and maximum workweek. 29 U.S.C. § 203 ("In determining * * * the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee"); see also *Curry v. Kraft Foods Global, Inc.*, 2010 WL 4338637, at *3 (N.D. Ill. Oct. 25, 2010).

4

the purview of the [CBA]" and therefore is preempted by Section 301 of the Labor Management Relations Act ("LMRA").[2] In ruling on Defendants' motion to dismiss, the Court determined that Plaintiffs' IMWL claim was preempted by the LRMA because the CBA—stating that "employees will not be compensated anytime for donning and doffing or washing outside of line time, unless the Company decides otherwise"—speaks directly to the issue of whether Plaintiffs could be compensated for donning and doffing, while Illinois law is silent on the issue.

In its motion for reconsideration, Plaintiffs contend that the Court misapprehended the nature of Plaintiffs' claims. Plaintiffs maintain that the question before the Court is not whether the CBA provides compensation for donning and doffing, but whether donning and doffing are compensable under the IMWL.[3] According to Plaintiffs, they are simply trying to recover for violations of substantive rights created by state law, which apply generally to all individual employees, and thus interpretation of the CBA is not necessary. Defendants counter that Plaintiffs' IMWL claim is preempted because the IMWL does not provide a statutory basis to recover wages for donning and doffing and thus, the only recovery available, if at all, would be under the provisions of the CBA. Furthermore, Defendants maintain that the central issue in this case is what constitutes compensable hours works and reference to the CBA is necessary to resolve that question.

As the Court explained in its prior opinion, a state law claim is preempted when resolution of the claim is substantially dependent upon the interpretation of a collective-bargaining agreement, or when the right to recovery is created under the agreement. See *Allis-*

---

[2] If preempted, the claim would have to be brought under the LMRA, which requires employees to exhaust grievance and arbitration remedies provided in the collective bargaining agreement before filing suit. See, *e.g.*, *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 501 (7th Cir. 1996).

[3] Plaintiffs also maintain that Defendants' practice of docketing 15 minutes of pay when they are only a few minutes (or less) late to the production floor violates the IMWL.

5

*Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985). Plaintiffs insist that the only determination that must be made is whether the IMWL, regardless of language to the contrary in the CBA, entitles Plaintiffs to recover wages and overtime for donning and doffing. If not, Plaintiff will lose on the merits of the case. If so, Plaintiffs posit that they would have a nonnegotiable right to compensation that would trump any contrary language in the CBA. See, *e.g., Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 260 (1994) ("Clearly, § 301 does not grant the parties to a collective bargaining agreement the ability to contract for what is illegal under state law."); see also *Whitmore v. Kraft Foods Global, Inc.*, 798 F. Supp. 2d 917, 923 (N.D. Ill. 2011) ("If the IMWL covers donning and doffing, then *Spoerle* instructs that the CBA is ineffectual in excluding those activities from employment time. If the IMWL does not cover donning and doffing, the [plaintiff] will lose, but that loss will be the result of state law's non-coverage of those activities, not the result of federal preemption.").

However, there has been a disconnect between the position articulated above and certain arguments advanced by Plaintiffs. On one hand, they claim to seek only that which they are entitled to under state law, disavowing any additional relief that might be available to them under the CBA. On the other, on the first page of their motion to reconsider, they posit that the question before the Court as "[w]hether the [LMRA] preempts claims for unpaid minimum wage and overtime that are based upon the [IMWL] in the absence of [an] identified disputed provision of the collective bargaining agreement." [DE 32 at 1.] This question could be interpreted at least two ways—either (i) that the "absence of an identified disputed provision" means that the CBA does not address the issue of donning and doffing or is consistent with state law or (ii) that Plaintiffs agree that the CBA clearly states that donning and doffing is not compensable and thus they are not disputing the terms of the CBA. Previously, the Court

6

understood Plaintiffs' lawsuit to be premised on the first interpretation. It now seems clear that Plaintiffs are not pursuing any remedies under the CBA. Instead, based on the clear import of their motion to reconsider (putting aside the confusing nature of the question put to the Court on page one), they seek only to establish a basic right under the state statute to be paid for donning and doffing (and also to resolve the legality of the practice know as "docking"), regardless of the language in the CBA.

In *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728 (1981), the Supreme Court considered whether a plaintiff could bring a free-standing employment based FLSA claim, despite the existence of a CBA allegedly governing the disputed issue. There, the plaintiffs were unionized truck drivers who were required to conduct unpaid safety inspections of their trucks before embarking on any trips. *Id.* at 730. The plaintiffs claimed that the CBA required that they be paid for "all time spent in [defendant's] service," and filed a grievance pursuant to the CBA to recover allegedly unpaid wages, which was rejected. *Id.* at 731-32. In response, the plaintiffs filed a claim in federal court under the FLSA based upon the same conduct and seeking pay for the same activities. *Id.* at 732. The lower courts held that the FLSA claim was improper and should have been submitted to arbitration under the CBA's grievance procedures. The Supreme Court reversed, explaining the difference between claims under a collective agreement and those that arise under a separate statute of general application:

> The FLSA rights petitioners seek to assert in this action are independent of the collective bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization. They are not waivable. Because Congress intended to give individual employees the right to bring their minimum wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum, we hold that petitioners' claims are not barred by the prior submission of their grievances to the contractual dispute resolution procedures * * * * In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under

7

> [the statute], an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

*Id.* at 746 (quotation omitted) (emphasis added).

Thus, reading Plaintiffs' claims to be cabined as set forth—that is, if Plaintiffs do not seek a determination as to the appropriate wage under the CBA, but instead assert only their statutory right to compensation under the IMWL—their motion to reconsider is well-founded. As noted in the Court's previous opinion, the Seventh Circuit in *Spoerle v. Kraft Foods Global, Inc.* observed the difference between claims brought as freestanding state law claims and those that may rely on a collective bargaining agreement. 614 F.3d 427 (7th Cir. Aug. 2, 2010). There, the plaintiffs brought claims under both the FLSA and Wisconsin's state wage and hour law to recover compensation for time spent donning and doffing protective clothing and walking to and from work areas. While the primary issue in the case was whether the FLSA could preempt the Wisconsin state law, the Court also separately addressed the interaction between the CBA and the Wisconsin law and noted that, regardless of what a CBA might contain, there is no basis for a collectively bargained agreement to preempt or otherwise interfere with state laws of general application. *Id.* at *3 ("Nothing that labor and management put in a collective bargaining agreement exempts them from state laws of general application * * * * Management and labor acting jointly (through a CBA) have no power to override state substantive law than they have when acting individually"). The difference between this case and *Spoerle* is that the Wisconsin law *expressly* provides for compensation of donning and doffing time, and Illinois law does not. However, if indeed Plaintiffs only wish to pursue remedies under the IMWL, this difference does not support preemption; rather, the dispute solely pertains to what Plaintiffs are entitled to under Illinois law. Defendants may well be correct that Plaintiffs cannot point to a

8

statutory basis to recover pay for the activities that they contend constitute "work."[4] However, as Plaintiffs apparently have been attempting to drive home, and the Court now more fully appreciates, the alleged absence of a meritorious basis to bring the claim (particularly in the face of contrary language in a collective bargaining agreement) is a separate issue from preemption.

Plaintiffs are indeed "masters" of their complaint. See, *e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987) (noting that the plaintiff's decision to sue only under the state law theory, eschewing a claim under the CBA, was entitled to deference under the well-pleaded complaint rule). Regardless of whether this choice serves them well on the merits, it is entitled to deference under the well-pleaded complaint rule. *Id.* ("Caterpillar's basic error is its failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contact rights, so long as the contract relied upon is *not* a collective bargaining agreement"). If Plaintiffs do not wish to press their additional CBA rights in this case, federal law does not force them to do so. *Rice v. Panchal*, 65 F.3d 637, 639, 646 (7th Cir. 1995) (holding that ERISA does not preempt the plaintiff's claim that the ERISA plan administrator is liable for medical malpractice where the plaintiff premised the claim solely on state law and did not invoke the ERISA plan); *Chavez v. Don Stoltzner Mason Contractor, Inc.*, 2010 WL 1417029, at *2 (N.D. Ill. Apr. 5, 2010) ("a

---

[4] Plaintiff has not presented, nor has the Court found, any cases holding that Illinois law requires time spent donning and doffing to be included in hours worked or that a collective bargaining agreement may not exclude donning and doffing from hours worked under the IMWL. Instead, legal authority appears to support the opposite conclusion. See, *e.g.*, *Carletto v. Quantum Foods*, 2006 WL 2018250, at *6 (Ill. App. Ct. 1st Dist. 2006) (addressed *infra*); *Curry*, 2010 WL 4338637, at *4 ("Illinois law does not contain a requirement like Wisconsin that requires calculation of donning and doffing time in hours worked"). However, contrary to Defendants' assertions in their response brief, the Court certainly did not decide the merits of this claim in its prior opinion. See Def. Resp. at 10. The parties will have to duke out the merits of the IMWL at a later time. The Court's previous opinion, as well as this opinion, sought to resolve only the question of whether Plaintiffs' IMWL claim was preempted by the LMRA.

plaintiff may choose to enforce solely those independent state-created rights and forego enforcement of CBA-created rights"). As fittingly summarized by Judge Feinerman in *Hawkins v. Securitas Sec. Services USA, Inc.*,

> [i]t does not matter whether Plaintiffs' decision to forego their CBA rights in this lawsuit is wise or foolish, strategically wise or shortsighted, or consistent or inconsistent with the wishes of their union. All that matters is that Plaintiffs are content with enforcing their statutory rights and willing to leave their additional CBA rights on the table—certainly for purposes of this case, and perhaps forever if issue preclusion prevents them from later seeking to enforce the CBA for time periods covered by this suit. The mere existence of those additional CBA rights will not require the court to interpret the CBAs when resolving the IMWL claim, and thus do not result in preemption."

2011 WL 5122679, at *5 (N.D. Ill. Oct. 28, 2011).

Defendants argue that it will be necessary to interpret various provisions of the CBA to determine what constitutes compensable hours worked. However, based on Plaintiffs' representations, the only issue is whether or not such activities are compensable as "hours worked" under the Illinois law. Plaintiffs are correct that this narrow issue is a matter of state law interpretation, not interpretation of the CBA or predecessor CBA.[5] Furthermore, if Plaintiffs were to prevail on the merits, it potentially may be necessary to reference the CBA to calculate damages, but, at least at this juncture, it appears as if the Court only would need to reference, not interpret, the CBA. Reference to the CBA for purposes of damages calculation does not support

---

[5] Defendants maintain that the predecessor CBA does not expressly state whether donning and doffing constitutes compensable work and thus consideration of the PCBA and customs and practices under it will be necessary to determine whether it creates implied rights to compensation for donning and doffing. This argument suffers the same fate as Defendants' arguments with respect to the CBA: Plaintiffs are not challenging the terms of the relevant collective bargaining agreements. Instead, they are endeavoring to establish a basic right under the state statute to be paid for donning and doffing (and also to resolve the legality of the practice know as "docking"), regardless of the terms of the relevant agreements. And *Spoerle* instructs that, regardless of what a CBA might contain, there is no basis for that agreement to preempt or otherwise interfere with state laws of general application. *Id.* at *3 ("Nothing that labor and management put in a collective bargaining agreement exempts them from state laws of general application * * * * Management and labor acting jointly (through a CBA) have no power to override state substantive law than they have when acting individually").

10

§ 301 preemption. See, *e.g., Wisconsin Central, Ltd. v. Shannon*, 539 F.3d 751, 758 (7th Cir. 2008). Looking up Plaintiffs' classifications and wage rates in the CBAs, and multiplying those figures by 1.5 for each hour of uncompensated overtime, does not require "interpretation" of the CBAs. To be sure, Plaintiffs current position forfeits any arguments they might have regarding more beneficial overtime provisions in the CBA that would need to be interpreted. See also *Whitmore*, 798 F. Supp. 2d at 925 n.7 (noting that the plaintiffs had "repeatedly disavowed any reliance on the CBA" and reminding them that taking a contrary position going forward would affect preemption). Plaintiffs have made clear to the Court that the relief they seek is solely under the IMLA and that reference to, but not interpretation of, the CBA is all that would be required should they succeed on the merits.

**III. Conclusion**

For the reasons set forth above, this appears to be an instance in which, in its prior opinion, the Court misapprehended the limited scope of Plaintiffs' claim. See *Bank of Waunakee*, 906 F.2d at 1191. Accordingly, the Court grants Plaintiffs' motion to reconsider [32] and reinstates Count I.

Dated: February 2, 2012   _____
　　　　　　　　　　　　　　　　　Robert M. Dow, Jr.
　　　　　　　　　　　　　　　　　United States District Judge

11