**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROCHELL MITCHELL, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO.: 10-CV-6847 |
| | ) | |
| JCG INDUSTRIES and KOCH FOODS, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Rochell Mitchell and Audrey Veasley, individually and on behalf of all others similarly situated, brought this action against Defendants JCG Industries, Inc. ("JCG") and Koch Meat Co., Inc. ("Koch"), as a putative class action for violation of the Illinois Minimum Wage Law ("IMWL"),[1] 820 Ill. Comp. Stat. § 105 *et seq.* (Count I), and, individually, for violation of the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. § 201 *et seq.* (Count II). Defendants have moved for partial summary judgment [57] on the donning and doffing claims asserted in Counts I and II. Defendants' motion requests judgment only as to Plaintiffs' donning and doffing claims, as Plaintiffs' motion for class certification seeks a class relating only to donning and doffing claims. Because a judgment in Defendants' favor likely would preclude class action, the Court has stayed proceedings pending the Court's ruling on the motion for partial summary judgment. Having now considered the relevant statutes and case law, all of the arguments advanced by the parties in the summary judgment briefing, as well as the briefing on

---

[1]  In their motion for class certification, Plaintiffs seek to represent other employees who worked in similar positions for JCG and Koch and shared similar job titles, pay plans, job descriptions, job duties, uniforms, and hours of work.

Plaintiffs' Rule 56(d) motion and Defendants' motion to stay, the Court grants Defendants'

motion for partial summary judgment [57].

## I.    Background

Plaintiffs Rochell Mitchell and Audrey Veasley worked as poultry processors or "line

workers" for JCG and Koch, two Illinois corporations that operate poultry processing plants.

Plaintiff Mitchell was employed as a line worker at the poultry processing plant at 4404 W.

Berteau, Chicago, between June 6, 2008 and March 20, 2011, while Plaintiff Veasley was

employed as a line worker at the same plant between February 7, 2008 and August 11, 2008.

Veasley and Mitchell were each paid $7.75 per hour when they were hired.[2]  Plaintiffs' shifts

were eight and one-half (8.5) hours long and included a one-half (0.5) hour unpaid meal break.[3]

Defendants paid their employees from the time a bell sounded and the production line started at

the beginning of their scheduled shift until the time it stopped at the end of their scheduled shift.

According to Plaintiffs, Defendants required employees to clock-in at least fifteen (15) minutes

prior to the start of their scheduled shifts.

As line workers, Plaintiffs were required to don and doff the following items of clothing

at the start and end of the workday:  a lab jacket, a plastic apron, cut resistant gloves, protective

ear plugs, plastic sleeves, guards and a hairnet.  Plaintiffs were required to don those items

before they reached the production line, at which point their shifts started; Plaintiffs' shifts then

ended when they left the line, after which they were required to doff those items.  According to

Plaintiffs, it typically took approximately 10 to 15 minutes to properly don the items, while

Defendants maintain that it takes approximately two minutes or less to don work-related

---

[2]  Veasley's and Mitchell's wage rates increased over time to at least $9.50 per hour and $9.30 per hour, respectively.

[3]  Instead of requiring employees to swipe in and out for meal breaks, Defendants automatically deducted thirty minutes for meal breaks.

clothing. Defendants required the employees to wear the protective equipment both to protect the product and protect the employees. Defendants forbade employees from wearing the protective equipment outside the plant, in the rest rooms, or in the cafeteria at mealtime, and employees could be disciplined for not properly wearing the protective equipment. Defendants employed a Quality Assurance Team partially to ensure that guidelines were followed.

Approximately halfway through the scheduled shift, at a predetermined times, employees took staggered thirty (30) minute meal breaks. During employees' 30-minute unpaid meal breaks, they had to doff the protective equipment and wash. Defendants did not pay employees for the thirty-minute meal break. Plaintiffs maintain that employees spend approximately 10 to 15 minutes of their unpaid 30-minute mealtime to wash their hands, obtain food, and don and doff the protective equipment and that the employees wash their hands in a basin on the same floor as the production floor.

At all times during her employment, Plaintiff Veasley's employment was governed by a collective bargaining agreement dated October 8, 2007, between Chicago Joint Board, RWDSU (Union) and JCG, which was in effect from October 8, 2007 through January 15, 2011 (the "2007 CBA"). Article XVII of the 2007 CBA states:

> This agreement once signed by the duly authorized officers of the Company [i.e., Defendant JCG] and the Union, shall remain in full force and effect though October 8, 2010, and shall automatically be renewed on the same terms and conditions for consecutive one (1) year periods, unless sixty (60) days prior to the expiration of this Agreement, or any extension thereof, either party gives written notice by Registered Mail to the other party of termination or modification of this Agreement.

Neither the Union nor JCG gave written notice by registered mail to the other party of the termination or modification of the 2007 CBA within sixty days of the expiration of the 2007 CBA (and thus it was automatically renewed).

Plaintiff Mitchell's employment was governed by the 2007 CBA from the start date of her employment (i.e., June 6, 2008) until January 15, 2011. For the remaining 60 days, her employment was governed by a collective bargaining agreement dated January 16, 2011, between Production Workers Union of Chicago and Vicinity Local 707 and JCG, which was and is in effect from January 16, 2011 to January 18, 2014 (the "2011 CBA" and, collectively with the 2007 CBA, the "CBAs"). The 2007 CBA states that "[e]mployees will not be compensated anytime for donning and doffing or washing outside of line time, unless the Company decides otherwise." The 2011 CBA states that "[u]nless otherwise mutually agreed, the regular work week shall be Monday through Friday from line start time to end time." The Letter of Understanding that is attached as page 27 to the 2011 CBA states: "under the language of the collective bargaining agreement and the custom or practice at the Berteau facility under the agreement, no additional minutes are to be paid to those employees for the time they spend donning and doffing gear."

On September 27, 2010, Plaintiffs filed their complaint in the Circuit Court of Cook County, Illinois, and on October 25, 2010, Defendants filed their Notice of Removal pursuant to 28 US.C. §§ 1331,1367 and 1441. Plaintiffs allege that they regularly worked more than forty hours per week without proper overtime compensation by working before the start of their shifts, through unpaid meal breaks, and after their scheduled shifts.

## II.    Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*,

Inc., 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

## III. Analysis

Plaintiffs seek donning and doffing compensation and bring Count I as a putative class action under the IMWL and Count II as an individual claim under the federal FLSA. Plaintiffs also claim that they are entitled to payment for the walking time between the clothes-changing area and their work area, whether or not donning and doffing is found to be compensable, and that § 203(o) does not apply to donning and doffing at the start and end of meal breaks. Defendants maintain that both the IMWL and the FLSA permit Defendants and their employees to agree to exclude time for donning and doffing through the collective bargaining process. The Court addresses each contention in turn.

### A.     Illinois Minimum Wage Law

In Count I of the complaint, Plaintiffs allege a violation of the IMWL,[4] claiming that Defendants "regularly and repeatedly fail[ed] to properly compensate Plaintiffs * * * for the actual time they worked each week," as well as "willfully failed to pay overtime and other benefits."  Plaintiffs maintain that the question before the Court is not whether the CBA provides compensation for donning and doffing, but whether donning and doffing are compensable under the IMWL.  According to Plaintiffs, they are trying to recover for violations of substantive rights created by state law, which apply generally to all individual employees, and thus interpretation of the CBA is not necessary.  Defendants counter that the IMWL does not provide a statutory basis to recover wages for donning and doffing and thus, the only recovery available, if at all, would be under the provisions of the CBA and the CBA explicitly rejects such recovery.  Plaintiffs have stipulated that "the CBA clearly states it does not pay for donning and doffing" and that "[n]either party disputes this clear and unambiguous language, nor is interpretation necessary to determine liability."  [DE 32 at ¶ 11.]

As various courts in this District have acknowledged, the IMWL is silent with respect to the issue of whether donning or doffing time is compensable. Compare 820 ILCS 105/1 *et*

---

[4]   The IMWL is a wage and hour law that establishes the minimum wage at $8.25 an hour but expressly states that it does not amend or rescind any other state laws that provide more favorable minimum wage or maximum hour standards.  See 820 ILCS 105/4, 105/13.  Likewise, the IMWL does not "in any way diminish the right of employees to bargain collectively with their employers through representatives of their own choosing in order to establish wages or other conditions of work *in excess of the applicable minimum standards of the provisions of this Act.*"  820 ILCS 105/14 (emphasis added).  The federal counterpart to the IMWL is the FLSA.  See, *e.g.*, 29 U.S.C. § 203.  Section 203(o) of the FLSA allows parties to a CBA to specifically exclude donning and doffing from the amount of hours worked for the purpose of calculating the minimum wage and maximum workweek.  29 U.S.C. § 203 ("In determining * * * the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee"); see also *Curry v. Kraft Foods Global, Inc.*, 2010 WL 4338637, at *3 (N.D. Ill. Oct. 25, 2010).

*seq* (silent with respect to clothes changing) with Wis. Admin. Code § DWD 272.12(2)(e)(1)(c) ("Among the activities included as an integral part of the principal activity are those closely related activities which are indispensable to its performance. If an employee * * * cannot perform their principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity."). Given this statutory silence, courts must decide whether the Minimum Wage Law Act compels compensation for time spent donning and doffing clothing. Courts that have considered the issue have concluded that the statute does not require such compensation. See *Curry v. Kraft Foods Global, Inc.*, 2012 WL 104626, at *4-7 (N.D. Ill. Jan. 12, 2012) (holding that "longstanding custom of non-compensation for donning and doffing between the Plaintiffs and Kraft makes such pay unrecoverable"); *Whitmore v. Kraft Foods Global, Inc.,* 2011 WL 2560235 (N.D. Ill. June 27, 2011) (noting that it is for the Illinois Supreme Court to address the issue of the scope of the statute and finding that the Minimum Wage Law "does not explicitly mention doffing and donning anywhere. Nor are there, as far as this Court is aware, any Illinois cases that hold that doffing and donning must be compensated ..."); *Porter et al. v. Kraft Foods Global, Inc.,* Case No. 10 L 44, Order on Defendant's Motion for Summary Judgment (Circuit Court of the Sixth Judicial Circuit, Champaign County, IL July 18, 2011) ("The Court find that, as a matter of law, the time spent donning and/or doffing is *de minimis* and therefore not compensable, and further that such time is also preliminary or subsequent to principle activities and therefore not compensable on this basis as well."); see also *Mitchell v. JCG Indus.,* 792 F. Supp. 2d 1005, 1010 (N.D. Ill. 2011) ("The parties have not presented, nor has the court found, a single case holding Illinois law requires time spent donning and doffing to be included in hours worked or that a collective bargaining agreement may not

exclude donning and doffing from hours worked under the Minimum Wage Law. Instead, legal authority supports just the opposite conclusion * * * [U]nlike Wisconsin law, Illinois wage and hour law does not require the calculation of donning and doffing time.") (citing *Carletto v. Quantum Foods,* 2006 WL 2018250, *6 (Ill. App. Ct. 2006)).  Defendants supply an additional case from the Circuit Court of Champaign County that stands for the proposition that donning and doffing time is non-compensable.  In short, the statute fails to mention donning or doffing time, no court has held that this legislative silence implies that there is a right to compensation for donning or doffing time, and Plaintiffs have not identified any cases holding that the IMWL requires an employer to compensate employees for time spent donning and doffing.  Therefore, there is an absence of authority under the Minimum Wage Law Act, standing alone, to definitively resolve this matter.  See *Curr*y, 2012 WL 104626 at *3.

Plaintiffs cite to an Illinois Department of Labor regulation that states that "hours worked" means "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer."  56 Ill. Admin. Code § 210.110.  Although Illinois gives administrative interpretations of statutes some weight and deference, they are not binding. *People ex rel. Dept. of Labor v. MCC Home Health Care, Inc.*, 339 Ill. App. 3d 10, 21 (1st Dist. 2003); see also *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 366 (2009) (administrative regulation entitled to "some weight and deference"); *Kerbes v. Raceway Assocs.*, Case No. 11-0318, 2011 IL App (1st) 110318, at *870-71 (Ill. App. 1st Dist. Nov. 21, 2011) (there is a "paucity of authority directly considering Section 4(a) of the [IMWL] and its implementing regulations," so consideration of the FLSA is appropriate).  Further, notwithstanding the IDOL regulation, the cases previously cited acknowledge that the IMWL either does not require

compensation for donning and doffing or is silent on the issue. As explained below, in light of clear authority directing the Court to look to the FSLA for guidance in addressing this issue, the Court is not persuaded by Plaintiffs' citation to the IDOL regulation.

Where the IMWL is silent on an issue, Illinois courts (and federal courts applying Illinois law) look to analogous federal labor statutes—the FLSA in particular—for guidance. See *Kerbes v. Raceway Assocs., LLC,* 2011 WL 5903473, *5 (Ill. App. Ct. Nov.21, 2011) ("[I]n light of their substantial similarities, provisions of the Fair Labor Standards Act and interpretations of that legislation can be considered in applying the Minimum Wage Law * * * * In light of the paucity of authority directly considering [the relevant section] of the Minimum Wage Law and its implementing regulations, we will similarly consider the Fair Labor Standards Act, its implementing regulations, and relevant interpretive case law."); *Lewis v. Giordano's Enters.,* 921 N.E.2d 740, 745–46 (Ill. App. Ct. 2009) ("When, as in this case, there is an absence of Illinois case law interpreting an Illinois wage statute, a court may look for guidance to federal cases interpreting an analogous federal statute, namely the Fair Labor Standards Act * * * [F]ederal cases interpreting the Fair Labor Standards Act * * * are persuasive authority and can provide guidance in interpreting issues under the Wage Law and the Wage Payment Act"); *Bernardi v. Village of North Pekin,* 482 N.E.2d 101, 102 (Ill. App. Ct. 1985) ("[I]n the absence of Illinois decisions dealing with a particular labor law issue, federal decisions dealing with a substantially similar law, while not controlling, may be helpful and relevant."); see also *Urnikis–Negro v. Am. Family Prop. Servs.,*616 F.3d 665, 672 n. 3 (7th Cir. 2010) ("* * * the Illinois Minimum Wage law, 820 ILCS 105/4a(1), is parallel to * * * the Fair Labor Standards Act, and Illinois courts apply the same principles * * * to the state provisions."); *Turner v. The Saloon, Ltd.,* 595 F.3d 679, 690 n. 7 (7th Cir. 2010) ("Because the protections of the Illinois Wage

Payment and Collection Act are coextensive with those of the Fair Labor Standards Act, our analysis of [plaintiff's] claim applies equally to his Illinois Wage Payment Act claim.") (internal citations omitted); *Villareal v. El Chile, Inc.,* 776 F. Supp. 2d 778, 784 (N.D. Ill. 2011) ("The Fair Labor Standards Act is relevant to plaintiffs' Minimum Wage Law claims because the Minimum Wage Law parallels the Fair Labor Standards Act, and the same analysis generally applies to both statutes * * * [C]ourts have recognized that federal decisions interpreting the Fair Labor Standards Act also apply to claims asserted under the Minimum Wage Law."). Additionally, the IMWL itself provides that guidance in interpreting the statute should be derived from the FLSA, as the IMWL's administrative regulations specifically instruct the Director of the Illinois Department of Labor to "refer to the Regulations and Interpretations of the Administrator, Wage and Hour Division, U.S. Department of Labor, administering the Fair Labor Standards Act of 1938, as amended." 56 Ill. Adm. Code 210.120.

The default rule under the FLSA is that donning and doffing time is compensable as time worked. However, § 203(o) allows for management and the union to enter into a collective bargaining agreement that excludes from "Hours Worked" any time spent changing clothes. See 29 U.S.C. § 203(o).[5] Numerous federal courts have held that this provision "contemplates that non-payment of donning and doffing time may be an express or implied term of a CBA."

---

[5]  Section 203(o) states that:

> As used in this Chapter—
>
> (o) Hours Worked.—In determining for the purposes of sections 206 and 207 of this title, the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday, which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o). Section 203(o) thus applies when (1) there is a bona fide CBA between the parties; (2) that excludes compensation for time spent "changing clothes"; (3) either (a) by "its express terms" or (b) by "custom or practice."

*Salazar v. Butterball, LLC*, 644 F.3d 1130, 1141 (10th Cir. 2011) (holding that customs and practices under a CBA established that donning and doffing was not compensable under the FLSA); see also *Curry*, 2012, WL 104626, at *6. The FLSA permits employers and employees to exclude donning and doffing time from compensability and, by extension, the IMWL allows parties to do the same. Indeed, at least one Illinois appellate case implicitly recognized that the parties could exclude donning and doffing. See *Carletto v. Quantum Foods,* 2006 WL 2018250, at *6 (Ill. App. Ct. 2006).

Plaintiff contends that § 203(o) should not inform the Court's IMWL interpretation because § 203(o) is "restricted to Sections 206 and 207 of the FLSA," citing the following quote from *Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 429 (7th Cir. 2010):

> The first words of § 203(o) are: "In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed * * *." Section 206 sets the federal minimum wage per hour worked. Section 207 specifies how many hours a person may work in a given period before overtime pay commences. These are rules of federal law. States are free to set higher hourly wages or shorter periods before overtime pay comes due. That's what § 218(a) says. Nothing in § 203(o) limits the operation of § 218(a).

Unlike the IMWL—which is silent on the issue—the Wisconsin minimum wage law at issue in *Spoerle* expressly required employees to be compensated for donning and doffing time. 614 F.3d at 429. Thus, in ruling that § 203(o) did not permit the parties to exclude donning and doffing time in their CBA, the *Spoerle* court was making the point that § 203(o) did not allow the parties to a CBA to override Wisconsin's minimum wage law, which contained an express, higher standard. The *Spoerle* court did not hold that, where a state law is silent on an issue, courts may not use § 203(o) for interpretive guidance.

Moreover, while § 203(o) does state that it is to be used "[i]n determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed,"

nothing in the FLSA or case law supports a conclusion that the FLSA cannot be used by federal and state courts to interpret the IMWL. After *Spoerle*, § 203(o) obviously does not supersede or override the IMWL. Rather, it informs and guides the Court's interpretation and application of the IMWL. Given that the IMWL, unlike Wisconsin's law, is silent as to whether donning and doffing time must be compensated, this guidance is appropriate.

There is no dispute that Plaintiffs' employment relationship with Defendants was governed by one of two CBAs. There also is no dispute that the parties, through the collective bargaining process, agreed to exclude donning and doffing from compensability.[6] Furthermore, ample authority supports the conclusion that the items donned and doffed by Plaintiffs are "clothes" within the ambit of § 203(o). See *Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 428 (7th Cir. 2010) (concluding that "safety gear, such as steel-toed boots and hard hats, plus a smock that keeps other garments clean" and "hair nets and beard nets" constituted clothes within the meaning of § 203(o)); *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 212, 214-16 (4th Cir. 2009) (holding that safety shoes, smocks, aprons, safety glasses, ear plugs, bump caps, hair nets, gloves, sleeves, and arm shields are clothes for § 203(o) purposes). Accordingly, because Plaintiffs' union and employers agreed to exclude time spent donning and doffing from compensable time in the CBAs—which, to date, is not prohibited by the IMWL and is appropriate under the FLSA—Defendants' are entitled to summary judgment on Plaintiffs' claim in Count I.

### B.    Fair Labor Standards Act

The FLSA analysis contained above applies even more directly to Count II of Plaintiffs' complaint. As previously set forth, the FLSA explicitly provides that unionized employees and

---

[6]    Plaintiffs have taken the position that the relevant collective bargaining provisions are so clear and unambiguous that no interpretation will be required by the Court.

employers may agree to exclude donning and doffing, and numerous federal courts have enforced such provisions. See, *e.g., Salazar v. Butterball, LLC*, 644 F.3d 1130, 1141 (10th Cir. 2011) (customs and practices under a CBA established that donning and doffing was not compensable under the FLSA); *Anderson v. Cagles, Inc.*, 488 F.3d 945, 958-59 (11th Cir. 2007) (same); *Curry*, 2012, WL 104626, at *6. Thus, summary judgment is appropriate on Count II as well.

### C.     "Instrument Washing" and "Walking Time" Claims

Plaintiffs' response brief asserts that Plaintiffs should have been compensated for washing unidentified "instruments" after the end of their scheduled shifts. Plaintiffs' claim is not in their complaint, and Plaintiffs are not allowed to amend the complaint in a brief—particularly in response to a motion for summary judgment. See *Pritchard v. Rainfair, Inc.*, 945 F.2d 185, 191 (7th Cir. 1991) (questioned on other grounds). Moreover, neither Plaintiff has submitted an affidavit attesting that she actually washed any instruments after her shift ended and in fact Defendants have submitted an affidavit attesting that employees other than line workers wash any instruments used.

Plaintiffs also maintain that even if donning and doffing is not compensable, the act of donning and doffing still could start and end the workday under the continuous workday rule under § 254 of the FLSA. Although the response never expressly says so, presumably Plaintiffs contend that they are entitled to the time spent walking from the clothes-changing area to their work areas. However, the complaint does not include "walking time" allegations. Indeed, the first time that Plaintiffs suggested that they were seeking back pay for time spent walking to and from the clothes-changing area and work stations was in a footnote to Plaintiffs' Rule 56(d) Motion. Again, Plaintiffs are not permitted to amend their complaint by adding new claims in a

response brief. See *Pritchard*, 945 F.2d at 191. Further, to the extent that the Court were to consider a "walking time" claim, the Seventh Circuit's recent opinion in *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590 (7th Cir. 2012), *cert. granted*, 2013 WL 598470 (U.S. Feb. 19, 2003), makes it clear that, where a CBA excludes donning and doffing from compensability pursuant to Section 203(o), donning and doffing cannot be a principal activity that supports a walking time claim. 678 F.3d at 596-97.[7]

Plaintiffs attempt to circumvent *Sandifer* by arguing that, while the donning and doffing at issue in *Sandifer* did not meet the definition of "principal activity" under § 254(a), the donning and doffing at issue in this case does. According to Plaintiffs, the distinction between this case and *Sandifer* lies in the purpose of the work clothes. Plaintiffs maintain that the clothes in *Sandifer* were "personal protective equipment" benefitting the employees whereas here, the clothes were required by law to protect food from contamination and benefitted the employer, such that donning and doffing in this case is a principal activity "essential and integral" to poultry processing and triggers the beginning and end of each workday. Plaintiffs also contend that, regardless of whether the 2007 and 2011 CBAs contain a § 203(o) exclusion, § 203(o) does not, and cannot, modify what activities are "principal activities" under § 254(a). Both of these arguments ignore the core holding of *Sandifer*.

In *Sandifer*, the Seventh Circuit analyzed the interplay between § 203(o) and § 254(a) and held that—regardless of the purpose of the clothes—clothes-changing activities properly excluded from compensation in a CBA pursuant to § 203(o) cannot be principal activities capable of starting the workday:

---

[7]    Although the Supreme Court has granted a petition for writ of certiorari in *Sandifer*, the Seventh Circuit holding in that case remains controlling in this circuit unless and until the Supreme Court rules otherwise.

Section 203(o) permits the parties to a collective bargaining agreement to reclassify changing time as nonworking time, and they did so, agreeing that the workday would not start when the workers changed their clothes; it would start when they arrived at their work site. If clothes-changing time is lawfully not compensated, we can't see how it could be thought a principal employment activity, and so section 254(a) exempts the travel time in this case.

678 F.3d at 596-97. Critically, *Sandifer* found irrelevant the plaintiffs' argument that the clothes in question were "protective" in function. *Id.* at 594 ("It would be absurd to exclude all work clothes that have a protective function from section 203(o), and thus limit the exclusion largely to actors' costumes and waiters' and doormen's uniforms."). Sandifer did not deem it necessary to analyze whether donning and doffing was required by law or the employer, or for whose benefit it was done. The dispositive questions in Sandifer were whether the items at issue were clothes and were excluded by a CBA. The court answered both in the affirmative and doomed the plaintiffs' walking time claim.[8] Thus, pursuant to binding circuit precedent, Plaintiffs' attempt to demonstrate that their donning and doffing satisfy the principal activity test—and their reliance on *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), *Steiner v. Mitchell*, 350 U.S. 247 (1956), *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), *Armour & Co. v. Wantock*, 323 U.S. 126 (1944), and *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)— simply is not on point.[9]

---

[8]   Plaintiff's cite one case for the proposition that clothes-changing can be a principal activity for § 254(a) purposes even if excluded from compensation pursuant § 203(o). See *Franklin v. Kellogg Co.*, 619 F.3d 604 (6th Cir. 2010). *Sandifer* expressly found that Franklin was "clearly wrong" on that point. 678 F.3d at 598. Indeed, the Seventh Circuit stated that "because by disagreeing with *Franklin* we would create an intercircuit conflict, we have circulated this opinion to the full court in advance of publication. None of the judges in regular active service voted to hear the case *en banc*." *Id.* (internal citation omitted). This Court must apply this Circuit's law, which rejects the rule espoused in *Franklin*.

[9]   Indeed, none of those cases was a § 203(o) CBA exclusion case, and did not reach the issue settled in *Sandifer*; namely, that donning and doffing excluded in a CBA cannot constitute a principal activity. *Sandifer* specifically acknowledged this distinction with *Alvarez*: "*Alvarez* held that when [donning and doffing is a  principal activity not excluded by Section 203(o)] the time the worker spends walking from the locker room to the worksite is not time walking to and from a principal activity, but instead is time walking between principal activities." 678 F.3d at 596 (emphasis in original).

### D. Meal Time Claims

Plaintiffs also assert meal-break donning and doffing claims. However, the Court's reading of the Seventh Circuit's decision in *Sandifer* requires judgment on Plaintiffs' meal-break claims as well. First, *Sandifer*'s articulation of legislative intent demonstrates that, despite § 203(o)'s reference to the "beginning or end of each workday," Congress intended for it to apply to meal-break donning and doffing claims, and a contrary interpretation would thwart the overall statutory scheme and lead to absurd results. Plaintiffs contend that the congressional intent behind the FLSA is "to protect workers" and that construing § 203(o) to apply to meal breaks would thwart that intent. That argument oversimplifies the congressional intent behind the FLSA. In *Sandifer*, the Seventh Circuit stated:

> It was [Congress's] concern with the disruption of the workplace caused by forcing employers to compensate for travel time and clothes-changing time, as the Supreme Court held they must do in *Anderson v. Mt. Clemens Pottery Co., supra,* 328 U.S. at 690–92 (1946); *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers,* 325 U.S. 161, 163–64 (1945); and *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698 (1944), that drove the enactment of sections 203(o) and 254(a). * * * This history provides guidance to the meaning of "clothes" and "principal activity" by showing that Congress was trying to eliminate the disruptions that the Court's interpretation of the Fair Labor Standards Act had caused, and to allow the determination of what is compensable work in borderline cases (is changing into work clothes "work"? is walking from a locker room to a work station "work"?) to be settled by negotiation between labor and management.

*Sandifer*, 678 F.3d at 597-98. Clearly, the Seventh Circuit reads Congress's intent in enacting (and amending) the FLSA as accommodating both the protection of workers and the preservation of the usefulness of collective bargaining.

Second, *Sandifer*'s[10] reliance on *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 216 n.4 (4th Cir. 2009)—which summarily dismissed meal-time donning and doffing claims—undercuts Plaintiffs' meal-time claims. In *Sepulveda*, the Fourth Circuit rejected poultry

---

[10] The Seventh Circuit also relied on *Sepulveda* in *Spoerle*.

processors' FLSA meal-time donning and doffing claims, concluding that the time spent donning and doffing was part of a bona fide meal period under 29 C.F.R. Section 785.19. In relying heavily on *Sepulveda* and not separating out *Sepulveda*'s treatment of meal-time donning and doffing claims, the Seventh Circuit in *Sandifer* and *Spoerle* at least implicitly recognized that meal-break donning and doffing is part of a non-compensable bona fide meal period. *Sepulveda*, 591 F.3d at 216 n.4. This interpretation is consistent with observations expressed by the Seventh Circuit in both *Sandifer* and *Spoerle*.

Under Section 785.19, meal periods are not considered compensable work if they are "bona fide," and the Seventh Circuit, like most federal circuits, has adopted a "predominant benefit" test to determine whether they are. See *Barefield v. Village of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996). Under that test, a meal period is not work time if the employees' time is spent predominantly for their benefit. *Id.* A recent district court case from Louisiana is both on-point and instructive. Applying the predominant-benefit test, the court granted summary judgment on the plaintiffs' meal-time FLSA claims, holding:

> Cases that find a meal period is compensable usually involve employees who are required to remain at their workstation, be on call for any issues that arise, or actually perform work-related tasks. Examples include the maintenance employees at the meat processing plant * * * who were entitled to compensation when they were required to wear their radios and tools during lunch, could not leave the site, and had their lunch breaks interrupted frequently by work demands.

*Isreal v. Raeford Farms of Louisiana, LLC*, 784 F. Supp. 2d 653 (W.D. La. 2011). The plaintiffs in *Isreal*, like Plaintiffs here, did not contend that they were required to process poultry during their meal breaks. Thus, the court concluded that the plaintiffs were completely relieved from duty during their meal period and the time was used "predominantly for their benefit." Although there was "minimal benefit to the employer by virtue of the employees donning their gear at the end of the period," summary judgment was appropriate. *Sepulveda* reached the same conclusion,

as a matter of law.  See also *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700 (E.D.N.C. 2011) (dismissing meal-time donning and doffing claims brought by poultry processors).

The reasoning in these cases is sound, and at least implicitly has been adopted by the Seventh Circuit in *Sandifer*.  Plaintiffs have failed to address any of these cases or the Seventh Circuit's implicit adoption of them.  Therefore, the Court concludes that Plaintiffs' meal period was a non-compensable bona fide meal period notwithstanding the donning and doffing.

* * * * *

Contrary to Plaintiffs' contentions, the case law that has developed in this area so far, and which almost entirely supports Defendants' position, is not premised on the assumption that employers can require employees to perform tasks for free as long as such tasks are not specifically defined as "work" under applicable statutes.  Rather, the law appears to rest on the notion that employers and unions can exclude compensation for donning and doffing through collective bargaining agreements, while presumably giving employees benefits that they might not otherwise receive, at least until a state changes its laws (as Wisconsin has) to provide otherwise.  Of course, the critical questions answered in *Sandifer* are now pending in the Supreme Court.  Should the Supreme Court uphold *Sandifer*, perhaps Plaintiffs' efforts would be better aimed at the Illinois General Assembly rather than the courts.

**IV.     Conclusion**

For the reasons set forth above, the Court grants Defendants' motion for partial summary judgment [57] and will enter judgment on the donning and doffing claims asserted in Counts I and II.  Plaintiffs' amended motion for class certification [80], which seeks a class relating only to donning and doffing claims, is denied as moot.  The Court will set this matter for a status conference to discuss the issues that remain pending.

Dated: March 8, 2013                    _____
                                                            Robert M. Dow, Jr.
                                                            United States District Judge